## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

GUS VAKAS and GEORGE VAKAS,

       *Plaintiff,*

vs.

       Case No. 08-1127-EFM

HARTFORD CASUALTY INSURANCE
COMPANY,

       *Defendant.*

## MEMORANDUM AND ORDER

Before the Court is Defendant Hartford Casualty Insurance Company's ("Hartford") Motion for Summary Judgment (Doc. 9). The motion has been fully briefed. For the following reasons, the Court grants the motion.

## I. Facts

Hartford issued insurance pursuant to an insurance contract providing coverage for a medical office building and its contents.[1] The insured, John Vakas, M.D., passed away on March 13, 2005. Gus Vakas and George Vakas are the heirs of John Vakas and possess an interest in the insurance

---

[1]Plaintiffs controvert many of the facts on the basis that the document was not properly authenticated pursuant to Fed. R. Civ. P. 56(e) or D. Kan. Rule 56.1(d) and asserts that the Court should disregard these documents. Plaintiffs, however, then "stipulate" to the majority of the facts. Defendant attached an affidavit to its reply brief in which Steve Kimberlain, national general adjuster for Hartford, testifies that the documents attached to Defendant's motion for summary judgment were true and correct copies of documents maintained in the business records of Hartford. Because Plaintiff stipulated to the facts and the documents have been authenticated, the Court finds that the facts included in this Order are uncontroverted.

policy.

On August 29, 2007, the building and its contents were destroyed in a fire.  The policy was in full force and effect at the time of the fire. The contract provides for a maximum $240,800 in replacement costs for business personal property.

The business property largely consisted of medical supplies including x-ray machines, lab materials, therapy machines, and various other office equipment. The plaintiffs replaced four items: a refrigerator, a Mita Copier, a Canon Copier, and a TI Computer. The value of the items actually replaced was $6,200.70. Plaintiffs did not replace any other items.

On March 6, 2008, Defendant sent Plaintiffs a check for $129,851.83 which Plaintiffs did not cash.  Defendant stated that the value was calculated by adding: (1) the actual cash value of the business property, $113,511.13; (2) the actual cash value of the lost supplies and equipment, $10,140.00; and (3) the value of the four replaced items, $6,200.70.  Plaintiffs never disputed the appraisal of the building contents and never submitted a written demand for an appraisal of the loss. Plaintiffs stipulate that the actual cash value is $129,851.83.

Plaintiffs assert in their Complaint that they are entitled to either the policy limits in the amount of $240,800 because all of the building contents were destroyed or the replacement cost value in the amount of $190,231.13 because the policy provided coverage for replacement cost value.  Defendant, in moving for summary judgment, contends that Plaintiffs are not entitled to the replacement value policy limits or the replacement costs  because Plaintiffs did not replace the items.

## II.  Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that "there is no genuine

issue as to any material fact" and that it is "entitled to judgment as a matter of law."[2]  "An issue of fact is 'genuine' if the evidence allows a reasonable jury to resolve the issue either way."[3]  A fact is "material" when "it is essential to the proper disposition of the claim."[4]  The court must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party.[5]

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.[6]  In attempting to meet this standard, the moving party need not disprove the nonmoving party's claim; rather, the movant must simply point out the lack of evidence on an essential element of the nonmoving party's claim.[7]

If the moving party carries its initial burden, the party opposing summary judgment cannot rest on the pleadings but must bring forth "specific facts showing a genuine issue for trial."[8]  The opposing party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[9]  "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits

---

[2]Fed. R. Civ. P. 56(c).

[3]*Haynes v. Level 3 Communications*, LLC, 456 F.3d 1215, 1219 (10th Cir. 2006).

[4]*Id.*

[5]*LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[6]*Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

[7]*Id.* (citing *Celotex*, 477 U.S. at 325.)

[8]*Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).

[9]*Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197 (10th Cir. 2000)(citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

incorporated therein."[10] Conclusory allegations alone cannot defeat a properly supported motion for summary judgment.[11]  The nonmovant's "evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise."[12]

Finally, summary judgment is not a "disfavored procedural shortcut," but it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[13]

## III.   Analysis

Under Kansas law, the "language of a policy of insurance, like any other contract, must, if possible, be construed in such manner as to give effect to the intention of the parties."[14]  The construction and effect of an insurance contract is a question of law to be decided by the court.[15]

Recently, the Kansas Supreme Court succinctly summarized the rules governing the interpretation of insurance contracts:

> If the language in an insurance policy is clear and unambiguous, it must be construed in its plain, ordinary, and popular sense and according to the sense and meaning of the terms used. An insurance policy is ambiguous when it contains language of doubtful or conflicting meaning based on a reasonable construction of the policy's language. An ambiguity does not exist merely because the parties disagree on the interpretation of the language.
>
> To determine whether an insurance contract is ambiguous, the court must not consider what the insurer intends the language to mean. Instead, the court must view the language as to what a reasonably prudent insured would understand the language to mean. This does not mean that the policy should be construed according to the

---

[10]*Adler*, 144 F.3d at 671.

[11]*White v. York Int'l Corp.*, 45 F.3d 357, 363 (10th Cir. 1995).

[12]*Bones v. Honeywell Intern, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[13]*Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

[14]*Goforth v. Franklin Life Ins. Co.*, 202 Kan. 413, 417, 449 P.2d 477, 481 (1969).

[15]*Warner v. Stover*, 283 Kan. 453, 456, 153 P.3d 1245, 1247 (2007).

-4-

insured's uninformed expectations of the policy's coverage.

Courts should not strain to find an ambiguity when common sense shows there is none. The court must consider the terms of an insurance policy as a whole, without fragmenting the various provisions and endorsements.

As a general rule, exceptions, limitations, and exclusions to insurance policies are narrowly construed. The insurer assumes the duty to define limitations to an insured's coverage in clear and explicit terms. To restrict or limit coverage, an insurer must use clear and unambiguous language. Otherwise, the insurance policy will be construed in favor of the insured.[16]

The only issue before the Court is whether Plaintiffs are entitled to replacement cost value.

The portion of the contract at issue states:

> **E. Property Loss Conditions**
> **5. Loss Payment**
> In the event of physical loss or physical damage covered by this policy:
> a. At our option we will either
> > (1) Pay the value of physically lost or physically damaged property, as described in paragraph d. below;
> > (2) Pay the cost of repairing or replacing the physically lost or physically damaged property, plus any reduction in value of repaired items;
> > (3) Take all or any part of the property at an agreed or appraised value; or
> > (4) Repair, rebuild or replace the property with other property of like kind and quality.
> b. We will give notice of our intentions within 30 days after we receive the sworn statement of loss.
> . . .
> d. We will determine the value of Covered Property as follows:
> > (1) At replacement cost (without deduction for depreciation), except as provided in (2) through (7) below.
> > (a) You may make a claim for physical loss or physical damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis.  In the event you elect to have physical loss or physical damage settled on an actual cash value basis, you may still make a claim on a replacement cost basis if you notify us of your intent to do so within 180 days after the physical loss or physical damage.
> > (b) We will not pay on a replacement cost basis for any physical or physical

---

[16]*Marshall v. Kan. Med. Mut. Ins. Co.*, 276 Kan. 97, 111-12, 73 P .3d 120, 130 (2003) (internal citations omitted).

damage:
>(i) Until the physically lost or physically damaged property is actually repaired or replaced; and
>(ii) Unless the repairs or replacement are made as soon as reasonably possible after the physical loss or physical damage.

Defendant contends that the unambiguous terms of the contract state that Plaintiffs are only entitled to the actual cash value of the items because the items were not replaced.[17]   Plaintiffs make numerous arguments as to why they are entitled to be paid the amount of replacement cost value. Essentially, Plaintiffs argue that the contract is ambiguous. Plaintiffs first argue that pursuant to the contract, they did not elect to have their claim determined on an actual cash value basis and therefore, they are entitled to have it determined on a replacement cost value method. However, the contract clearly states that the insurer makes the decision as to what loss payment method will be used.[18] The insured only gets to make the determination in certain circumstances which were not present in this case.[19]

---

[17]It would be helpful to the Court and beneficial to the parties' arguments that they cite to specific sections of the contract or define the terms that they rely upon. The Court notes that "actual cash value" is not a defined term in the contract nor is it defined by the Defendant in its motion for summary judgment. Both parties use the terms "actual cash value" and "replacement cost value" although neither term is defined in the contract or to the Court. From reviewing the record, it appears that "actual cash value" is the "replacement cost value" or "RCV" depreciated by 35% resulting in "actual cash value" or "ACV." *See* Doc. 10-5 (Insurer's property report with all property items listed).

In addition, although Defendant states that it is clear that Plaintiffs are only entitled to the actual cash value of the items pursuant to the first portion of the "Loss Payment" section of the contract, it does not provide the Court with the specific section it relies upon for this proposition. Although nothing in that particular section states "actual cash value," the Court assumes that Defendant is relying on section 5.a.(3) which states that the insurer will "take all or any part of the property at an agreed or appraised value."

[18]Section E.5.a (At *our* option we will either . . . .)(emphasis added).

[19]Section E.5.d.1(a).

-6-

Plaintiffs next contend that certain policy provisions are inherently inconsistent. Plaintiffs create ambiguity where there is none. As stated above, the insurer makes the determination as to what loss payment method is used,[20] and the insured is only given the right to choose the actual cash method or conversion into the replacement cost method in certain circumstances. As stated above, it does not appear that those circumstances were present in this case.

In any event, the contract requires certain conditions to be met before an insured will be payed their replacement costs, and these requirements are clearly delineated in the contract. Before the insured can obtain any replacement cost benefits, the insured must actually repair or replace the items as soon as reasonably possible after the physical loss. In addition, the insured must notify the insurer of its intent to make a claim on a replacement cost basis within 180 days of the physical loss. The contract must be read as a whole, and the insurer is simply requiring certain preconditions for the replacement cost method to be applicable. The limitation is set out in clear and explicit terms, and common sense dictates that the insured is required to replace the items before the insured will be given the replacement cost. Accordingly, the Court finds that the contract is not ambiguous.

Defendant also states that Plaintiff failed to comply with the policy because they failed to make a claim on a replacement cost basis for the property within 180 days after the damage. Plaintiffs argue that Defendant should be estopped from asserting that Plaintiffs' claim is untimely because Defendant told Plaintiffs that their policy only provides for settlement on an actual cash value basis.[21]

---

[20]Again, it appears as if section E.5.a(3) is the loss payment method that the insurer selected in this case which results in the insured being paid actual cash value.

[21]Plaintiffs asserted additional factual allegations in their argument in their response brief, and these additional "facts" include numerous emails between Defendant and Plaintiffs that Plaintiffs attached to the brief. Plaintiffs did not set forth each additional fact in separately numbered paragraphs as required by D. Kan. Rule

After reviewing the record, the Court will address the issue briefly.  Plaintiffs argue that the emails and correspondence from Defendant was an attempt to "bully" Plaintiffs into accepting actual cash value rather than replacement cost value. It appears to the Court, however, that these emails and letters were between both parties discussing the handling of the claim, and Defendant was communicating about the policy and the property.  It was Defendant's option as to which loss payment method applied.   In addition, as already determined by the Court, the clear and unambiguous language of the contract stated that Plaintiffs were not entitled to the cost of replacement unless the damaged property was actually repaired or replaced.  Plaintiffs apparently knew how to make a claim for replacement costs because Plaintiffs replaced four items, and Plaintiffs were given their replacement costs on those four items. With the exception of these four items, Plaintiffs have presented no evidence that they replaced any other items or that they made any claim to Defendant that they intended to replace other damaged property.

Defendant, relying on  *Burchett v. Kansas Mutual Insurance Company*,[22] contends that Plaintiffs are only entitled to the actual value of the lost business property because Kansas law dictates that an insured is required to repair or replace the damaged property to receive the cost of replacement. In *Burchett*, the Kansas Court of Appeals found that a clause in a contract requiring actual repair or replacement as a precondition to recovery on a replacement cost policy was unambiguous and therefore required the enforcement of the contract's terms.[23]  The language in this

---

56.1(b) but instead included these facts when arguing that Defendant should be estopped from stating that Plaintiffs' claim was untimely. Defendant did not specifically dispute these facts in its reply brief, likely because the "facts" were not set forth appropriately, but did address Plaintiffs' argument in its reply brief.

[22]30 Kan. App. 2d 826, 48 P.3d 1290 (2002).

[23]*Id.* at 828-29, 48 P.3d at 1291-92.

contract is similar in that it unambiguously states that the insurer will not pay on a replacement cost basis until the damaged property is actually repaired or replaced.  Because the policy language unambiguously requires actual repair or replacement of the property, it is entitled to enforcement.

In sum, the Court finds that the contract contains certain conditions that must be met before Plaintiffs are entitled to receive the cost of replacement. The contract is unambiguous, and a reasonably prudent insured would understand that to receive the cost of replacement, the insured was required to actually replace or repair the property.  Accordingly, under the contract's plain meaning, Plaintiffs are not entitled to the cost of replacement or the policy limits.

**IT IS ACCORDINGLY ORDERED** this 28th day of April, 2009  that Defendant's Motion for Summary Judgment (Doc. 9) is hereby GRANTED.

**IT IS SO ORDERED**.

/s Eric F. Melgren
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE